

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 22, 2014**

_____
**United States Bankruptcy Judge**

_____

```
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION
```

```
IN RE:                          §
                                §
MARY KAY MATTHEWS,              §   CASE NO. 14-30969-SGJ-7
                                §
     D E B T O R S.             §
                                §
```

**MEMORANDUM OPINION AND ORDER REGARDING MOTION TO WAIVE APPEARANCE BY DEBTOR AT THE SECTION 341 MEETING OF CREDITORS [DE #21]**

**I.    INTRODUCTION: THE QUANDARY PRESENTED WHEN A DEBTOR ASKS NOT TO APPEAR AT THE SECTION 341 FIRST MEETING OF CREDITORS.**

Came on for consideration the Motion to Waive Appearance by Debtor at the Section 341 Meeting of Creditors (the "Motion") [DE # 21]. This Motion presents a request that is not terribly uncommon. Specifically, from time to time, a request to excuse a debtor from appearing at his or her Section 341 first meeting of creditors is made—most typically because there are joint debtors and one is ill, disabled, incapacitated, perhaps overseas engaged

in military service, or even incarcerated.  In many cases, this court authorizes the trustee to conduct the section 341 meeting with only one spouse testifying on behalf of both, or with one spouse appearing telephonically.[1]  But the Motion now before the court is somewhat different and warrants further scrutiny.

The Motion was filed on June 26, 2014, after the Debtor, Mary Kay Matthews (the "Debtor") failed to appear at the Section 341 Meeting of Creditors.  Specifically, the Debtor's adult niece, Kimberly C. Allen (the "Niece"), appeared at the meeting with a "Limited Power of Attorney," purportedly signed by the Debtor on February 25, 2014 (two days before the bankruptcy filing), that stated that the Niece was "specifically and solely authorized to perform all acts including but not limited to the

---

[1] As this court has ruled many times, the court lacks the authority to outright excuse a debtor from attending the § 341 Meeting of Creditors.  The meeting is mandatory.  Section 341(a) of the Bankruptcy Code provides that a creditors' meeting "shall" be held within a reasonable time following the entry of the order for relief. Bankruptcy Rule 2003(a) sets the time frame for the meeting.  The debtor "shall" appear at the § 341 Meeting and undergo an examination, under oath, by the trustee and creditors.  11 U.S.C. § 343.  The debtor's presence at the § 341 Meeting is not merely ceremonial.  It plays a pivotal role in providing the trustee and creditors with valuable information regarding the debtor's financial situation. However, a trustee has discretion regarding the **_manner_** of conducting the § 341 Meeting of Creditors, including the manner in which the debtor appears.  This court has held that trustees may, in appropriate cases, in their discretion, allow debtors to appear at the meeting of creditors by telephone or video, if a trustee determines, upon a credible showing by a debtor, that there is some obstacle hampering physical attendance, such as the debtor's own medical condition.  And as alluded to above, in certain circumstances, one person's attendance on behalf of another will suffice, depending on the peculiarities of a particular situation (and most often, this involves one spouse appearing for another who is not physically able).

signing of my signature and do all things that Agent may deem necessary of [sic] desirable to consummate the reorganization of Mary Kay Matthews under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code")."  The Niece claims to have full and sole authority to act for the Debtor in this bankruptcy case.  The Niece wanted to appear on the Debtor's behalf and testify for the Debtor.

By way of further background, this issue arises in the context of a Chapter 7 case that was filed on February 27, 2014. The Debtor is 86-years-old, unmarried, has no children, and lives in a nursing home.  A doctor's note was submitted at the Section 341 Meeting stating that the Debtor has "cognitive deficits and physical impairments" as a result of a stroke that occurred in June of 2012.  The Chapter 7 Trustee told the Niece that a court order was needed to excuse the Debtor from appearing at the Section 341 Meeting.  Thus, the Debtor's attorney filed the Motion asking that the Debtor be excused from appearing, and that the Niece's testimony be accepted in the Debtor's stead.  The Debtor's Schedules reflect that she has no nonexempt assets.  The Debtor owns a $200,000 house, with no mortgage, that she claims as an exempt homestead (although she now lives in a nursing home and her Niece and the Niece's daughter currently reside in the home).  The Debtor has minimal personal property.  The Debtor lists $82,499 of unsecured debt, about $49,000 of which relates

to rental/debt that she incurred while living at two different assisted living facilities (before moving into her current nursing home), while apparently waiting for "aid and assistance" Veteran's Benefits to be approved and paid to her.  The remainder of the unsecured debt appears to be credit card debt.

It is not clear to the court who actually signed all of the bankruptcy paperwork (*i.e.,* the Voluntary Petition, Schedules, and Statement of Financial Affairs).  All of the documents contain at the signature lines a typed, electronic "/s/ Mary Kay Matthews."  However, the Limited Power of Attorney is also attached to each document, and the "Declaration for Electronic Filing of Bankruptcy Petition and Master Mailing List (the "Matrix")" on file with the court [DE #8] is signed in handwriting by "Kim Allen [the Niece] for Mary Kay Matthews."

**II.   USE OF POWERS OF ATTORNEY BY INDIVIDUAL DEBTORS IN BANKRUPTCY.**

The Motion now before the court requires, first, a legal inquiry into the appropriateness of powers of attorney in bankruptcy—at least where individual debtor duties are implicated.  Specifically, as a matter of law, is a power of attorney (general or specific) acceptable to allow one human being to act for another in filing and prosecuting a bankruptcy case?  Additionally, if legally acceptable, are there factual circumstances that might sometimes make it problematic?

    *A.  Fifth Circuit Authority.*

    With regard to the legal question, while there have been

conflicting bankruptcy court opinions in the past on this issue,[2]

the Fifth Circuit answered this legal question, in December 2011,

---

    [2] *See, e.g., In re Curtis*, 262 B.R. 619 (Bankr. D. Vt. 2001)
(court addressed the question whether a general power of attorney is
sufficient to authorize the attorney-in-fact to file a petition on
behalf of a debtor who subsequently opposes being in bankruptcy; court
held no and dismissed the chapter 7 case of a man whose daughter filed
the case on his behalf via a general power of attorney; court stated
that, in some circumstances, a power of attorney will be acceptable
but, here, the document was not sufficient and it was also significant
that the debtor was unwilling to go forward); *In re Buda*, 252 B.R. 125
(Bankr. E.D. Tenn. 2000) (in case where two co-conservators had been
named over Mr. and Mrs. Buda, who were both disabled and suffering
from dementia, court held that the two state court-appointed co-
conservators did not have the power to file a Chapter 11 case for the
Budas and case should be dismissed; court held that state law governs
the determination of who has authority to file a bankruptcy petition
on behalf of another and looked to the terms of the conservator order
which, in the bankruptcy court's view, was not worded broadly enough
to encompass a Chapter 11 case); *In re Brown*, 163 B.R. 596 (Bankr.
N.D. Fla. 1993) (court dismissed bankruptcy case as a nullity, where
wife of debtor had filed the case shortly before the debtor died,
through a general power of attorney that did not expressly authorize
the filing of a bankruptcy case); *In re Harrison*, 158 B.R. 246 (Bankr.
M.D. Fla. 1993) (Judge Paskay held that Chapter 13 petition filed by
one for another, who later produced a power of attorney, was a nullity
and should be dismissed and, in so doing, pondered how one can grant
authority to another to verify under oath the truthfulness of
statements contained in documents and veracity of facts that are
unique to the debtor); *In re Sullivan,* 30 B.R. 781 (Bankr E.D. Pa.
1983) (the debtor was a Monk and, while assigned to serve in a foreign
country, had given his brother a power of attorney that included the
right to file a bankruptcy case on his behalf; held that the power of
attorney would be accepted to allow the Monk-debtor's brother to
appear in his stead); *In re Raymond*, 12 B.R. 906, 907 (Bankr. E. D.
Va. 1981) (court held that wife could not file a bankruptcy case for
her husband who was at sea aboard a naval vessel, through the use of a
power of attorney; "Bankruptcy is a personal exercise of a privilege
and due to the seriousness of it, it may not be exercised by
another."); *In re Ballard*, No. I-87-00718, 1987 WL 191320 (Bankr. N.D.
Cal. April 30, 1987) (court allowed joint bankruptcy petition filing
by couple, where wife signed bankruptcy petition on behalf of herself
and husband, using a "standard power of attorney" for the husband,
where husband was overseas serving in the United States Army and a
foreclosure on the couple's residence was imminent).

in an opinion that has received very little attention, stating "that a general power of attorney may be used to file a bankruptcy on another's behalf."[3]  However, the Fifth Circuit went on to suggest that there needs to be a "failsafe to prevent abuse" and that there needs to be some evidence that the debtor was informed and believed that the bankruptcy filing was proper.[4]

The *Spurlin* case involved a married couple who were each convicted of various bankruptcy crimes under 18 U.S.C. § 152(1) &(3) (concealing assets and making false oaths in a prior bankruptcy case).  While the Fifth Circuit's opinion deals with the couple's appeal of their criminal convictions, the factual recitations reveal that only the husband had met with the couple's bankruptcy counsel to file the couple's joint bankruptcy case, and the husband had presented the bankruptcy counsel with a general power of attorney executed between the spouses that purported to give Mr. Spurlin authority to act for Mrs. Spurlin. The opinion also mentions that both Mr. and Mrs. Spurlin had nevertheless appeared at the Section 341 meeting for questioning. In the appeal of the conviction, Mrs. Spurlin argued that she could not be convicted of bankruptcy fraud "because the joint bankruptcy petition was filed on her behalf using a power of attorney and because she did not supply any information for the

---

[3] *United States v. Spurlin*, 664 F.3d 954, 959 (5th Cir. 2011).

[4] *Id.* at 960.

petition."[5]  The Fifth Circuit examined the conflicting authority (mentioning four bankruptcy court opinions—two of which accepted powers of attorney and two of which did not), and determined that the better view was "that a general power of attorney may be used to file for bankruptcy on another's behalf."[6]  However, the court very clearly acknowledged that there needs to be a "failsafe to prevent abuse"—suggesting that there needs to be some evidence in each case that the debtor was "informed" and "dismissing if the debtor feels bankruptcy is improper."[7]  The Fifth Circuit ultimately determined that Mrs. Spurlin's bankruptcy petition was "valid, because there is enough evidence for a jury to infer ratification" and, thus, there was sufficient grounds to uphold her conviction for bankruptcy fraud.[8]  *Id.* at 960.

   B.  *Various Other Relevant Legal Authority.*

   The Fifth Circuit in *Spurlin* did not mention the relevance of state law with regard to the use of powers of attorney in bankruptcy.  However, certain courts have opined that state law governs a determination of who has the authority to file a

---

[5]  *Id.* at 958.

[6]  *Id.* at 959.

[7]  *Id.*

[8]  *Id.* at 960.

bankruptcy petition on behalf of another.[9]  *Spurlin* involved Louisiana debtors and, again, no mention was made of whether Louisiana state law empowers the agent or attorney-in-fact under a general power of attorney to file and prosecute a bankruptcy case on the principal's behalf.  The case at bar involves a Texas Debtor.  Under Texas law, a durable power of attorney may be drafted broadly enough to include the power on the part of the agent to bring claims and litigation for the principal, including empowering the agent to bring a voluntary bankruptcy case on the principal's behalf.[10]

Two Bankruptcy Rules are worth mentioning as well.  First, Bankruptcy Rule 1004.1 is entitled "Petition for an Infant or Incompetent Person" and it states that if such a person "has a representative, including a general guardian, committee, conservator, or similar fiduciary, the representative may file a voluntary petition on behalf of the infant or incompetent person."  The rule adds that if an infant and incompetent person does not have a duly appointed representative, the debtor may file a petition "by next friend or guardian ad litem" and that

---

[9]  *See Hager v. Gibson*, 108 F.3d 35, 38 (4th Cir. 1997); *In re Buda*, 252 B.R. 125, 128 (Bankr. E.D. Tenn. 2000).

[10]  *See* TEX. ESTATES CODE ANN. §§ 751.002 (West 2014) (formerly cited as TEX. PROB. CODE ANN. § 490(a) (West 2013)); 751.057 (formerly cited as TEX. PROB. CODE ANN. § 487A (West 2013)); 752.051 (formerly cited as TEX. PROB. CODE ANN. § 490(a) (West 2013)); 752.110 (formerly cited as TEX. PROB. CODE ANN. § 500 (West 2013)).

the bankruptcy court "shall appoint or shall make any other order to protect the infant or incompetent person."  Another rule, Bankruptcy Rule 1016, entitled "Death or Incompetency of Debtor" addresses, among other things, the situation of when a debtor might become incompetent during a case and provides that the case may continue on, so far as possible, as though the incompetency had not occurred.  Together, these bankruptcy rules make clear that a bankruptcy case may be filed and prosecuted in situations in which a debtor is incompetent.  And, significantly, Rule 1004.1 suggests that the bankruptcy court has authority and shall be proactive in making sure an incompetent debtor has a representative to act for him or her and is protected.

> C.   *Is this the End of the Inquiry?  Is this Much Ado About Nothing?*

Judge Paskay (when confronted with a Chapter 13 bankruptcy case that had been filed by proxy by one for another, by the holder of a power of attorney) described better than this court possibly could some of the concerns presented when, through a power of attorney, one person files bankruptcy for another. After referencing the various documents required by Bankruptcy Rules 1007(b)(1) & (2) to be filed under penalty of perjury, and further referencing the provisions of Bankruptcy Rule 9011 (the "certification rule"), Judge Paskay stated:

> It takes no elaborate discussion to point out the obvious that no one can grant authority to verify under oath the truthfulness of statements contained in the documents and

to verify facts that they are true when the veracity of these facts are unique and only within the ken of the declarant which in this instance is the Debtor and not [the agent/attorney-in-fact] who signed the verification. While she [the agent/attorney-in-fact] may have personal knowledge of how much the Debtor owes to her since she is listed as a creditor, she would not possibly have personal knowledge as to the precise amounts owed by the Debtor to each of the creditors. She certainly could not possibly have any personal knowledge of the truthfulness of the answers stated in the Statement of Financial Affairs which she verified under oath to be true.[11]

As noted earlier, the Fifth Circuit stated in the *Spurlin* case, with little fanfare, that a bankruptcy case may, indeed, be filed by one for another, through a general power of attorney. In that case, one spouse (a co-debtor) filed a joint case for both spouses, and supplied all of the information to their attorney for the Schedules and Statement of Financial Affairs and signed the documents for both parties, pursuant to a power of attorney. Clearly, in *Spurlin*, the co-debtor spouse was fully knowledgeable about their joint debts and affairs. More importantly, the spouse who did not sign the bankruptcy documents showed up at the Section 341 meeting for questioning and it was clear from the record that she was informed as to the bankruptcy filing and consented to it. The Fifth Circuit considered it significant that there was evidence in the record indicating that the debtor who had been put into a bankruptcy case with a power

---

[11] *In re Harrison*, 158 B.R. 246, 248-249 (Bankr. M.D. Fla. 1993) (ultimately finding that the Chapter 13 filing should be dismissed as a nullity).

of attorney was informed and consented (even participated to some extent—at the Section 341 meeting) during the case.

Here, or in any case where there is use of a power of attorney by one to purportedly act for an individual debtor, this court believes there must be some meaningful scrutiny regarding the facts and circumstances surrounding the power of attorney—especially if it is not a spouse that possesses the power of attorney. This court has concerns about setting precedent or endorsing a protocol that allows a family member (here a niece)—who happens to be living in the Debtor's house with her own daughter-to file a bankruptcy case by proxy for another family member, such that the court, the trustee, and the creditors (to the extent they participate) never see the Debtor, never get to hear the Debtor answer questions under oath, never see the Debtor's signature on crucial documents, and may not be completely convinced of the veracity and integrity of the whole process. There needs to be a "failsafe to prevent abuse." There also needs to be some evidence that the Debtor was informed and believed that the bankruptcy filing was proper.[12]

The record is deficient in the case at bar. The court heard testimony from the Niece and heard representations from Debtor's counsel at the hearing on the Motion. Still, the court has many questions and concerns. Among other things, this court has posed

---

[12] *Spurlin,* 664 F.3d at 960.

the question of why a person who is elderly and incapacitated, in a nursing home, with apparently no nonexempt assets, might need to file a bankruptcy case.  The court has not gotten satisfactory answers.  The Debtor has approximately $82,000 of unsecured debt (mostly incurred since her stroke).  Again, the Debtor appears to have no nonexempt assets.  The court has some concerns that extended family members may have goals here that predominate.

Clearly, this would all seem more palatable if there were a guardian ad litem.  *See In re Kirschner*, 46 B.R. 583 (Bankr. E.D.N.Y. 1985) (Judge Duberstein noted that a guardian may file a voluntary petition in bankruptcy where a court order authorizes such filing; in the *Kirschner* case, a wife who had been appointed guardian ad litem for her husband filed a joint bankruptcy case for both spouses); *In re Myers*, 350 B.R. 760 (Bankr. N.D. Oh. 2006) (in Chapter 13 case where debtor-wife, who held a power of attorney for her joint-debtor husband of 63 years, who was suffering from dementia, asked to become the "next friend" of him, citing Bankruptcy Rule 1004.1, Judge Woods appointed her to act for her incapacitated husband).  *See also In re Murray*, 199 B.R. 165 (Bankr. M.D. Tenn. 1996) (Judge Lundin, after an exhaustive review of what appears to be every published case and article dealing with guardians or other representatives filing

cases for incompetents or infants,[13] allowed a mother of a seven-year-old to file a Chapter 13 as "next friend," custodian and guardian for her daughter; daughter had inherited from her deceased father a house that had a mortgage on it and also received social security benefits and there were arrearages that the debtor/guardian wanted to cure through a plan using the social security benefits).

Why does a guardian ad litem seem more palatable?  Here, as mentioned, the court merely has a "Limited Power of Attorney" in the record—that solely purports to give the Niece power to file and act in a bankruptcy case.  The power of attorney situation puts the bankruptcy court in a bit of an awkward situation that probably is better suited for a probate or family court.  The court is left wondering whether the Debtor had the requisite mental capacity to appoint an attorney-in-fact at the time of the execution of the Limited Power of Attorney?  Where and under what circumstances was it signed?  Did the Debtor receive an explanation of its meaning by an attorney prior to its execution?  Is the Niece well suited to act as the Debtor's fiduciary?  Is the Niece really competent to testify under oath as to all of the Debtor's financial affairs (the court notes that the Niece seemed

---

[13] One such article cited collects English and American cases regarding "married women, infants, and lunatics."  Carl Zollmann, *Persons of Abnormal Status as Bankrupts*, 10 COL. L. REV. 221 (1910). *Murray*, 199 B.R. at 169.

to have some shaky answers concerning some of the scheduled debt). Presumably, probate or family courts do an exhaustive review of the facts and law before deciding whether to appoint a guardian ad litem to act for another. Hopefully, they have applied the correct standards to determine that it is in the best interests under the circumstances to allow one person to act for another. With a power of attorney, there are less protections. The bankruptcy process contemplates a debtor swearing under oath as to various important facts. How does the bankruptcy court know that the holder of the power of attorney is really the appropriate person to be swearing to important information and, for that matter, worthy of being the debtor's representative? The court has other parties-in-interest to consider here—namely the creditors. Having noted all of this, the court can, if it deems appropriate, appoint a next friend or guardian ad litem pursuant to Bankruptcy Rule 1004.1, where necessary. No such request is pending before the court.

**III. CONCLUSION AND RULING.**

In light of these concerns, the court rules as follows:

A. The Motion shall be **DENIED** unless a Supplement to the Motion is filed, within five (5) days, that includes or attaches the following: (I) evidence or testimony in the form of an Affidavit indicating whether the Debtor had the requisite mental capacity to appoint an attorney-in-fact at the time of her

14

signing of the Limited Power of Attorney or when any other power of attorney was signed by her, whether Debtor received an explanation prior to its/their execution of its/their meaning by an attorney, and generally where and under what circumstances the Debtor signed such document(s); (II) a declaration from Debtor's counsel regarding what he has done to confirm the Debtor is informed and consents to the bankruptcy filing; and (III) a statement clarifying who signed the bankruptcy paperwork (*i.e.,* the Debtor or the Niece).

    B.   The court will make a further ruling (or set this for further hearing) after the Supplement is filed.

    C.   If the Supplement is not filed within five (5) days, this case will be dismissed with prejudice to filing another bankruptcy case for 180 days.

    **IT IS SO ORDERED**.

###END OF MEMORANDUM OPINION AND ORDER###